[Cite as *State v. Flynn*, 2026-Ohio-2649.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                  :

    Appellee,                 :

vs.                           :

NICOLE J. FLYNN,           :

    Appellant.              :

                             :

CASE NO. CA2025-09-079

OPINION AND
JUDGMENT ENTRY
7/13/2026

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2023 CRB 03041

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Zachary K. Garrison, Assistant Prosecuting Attorney, for appellee.

Eppley Legal Group, and Mark C. Eppley, for appellant.

## **O P I N I O N**

**SIEBERT, J.**

{¶ 1} Nicole J. Flynn appeals her convictions in the Clermont County Municipal Court for nine counts of cruelty to animals. In her two assignments of error, Flynn argues her convictions were against both the sufficiency and manifest weight of the evidence and

that the trial court made multiple evidentiary errors at trial. We overrule these assignments of error. The State presented evidence and testimony at trial which demonstrated five horses languished in Flynn's care. Although Flynn attributed the horses' condition to other factors, she provided little to no evidentiary support to back up those claims. Moreover, the evidentiary issues Flynn complains of were not objected to at trial, unconvincingly argued on appeal, and would not have affected the outcome of the trial.

**Background**

{¶ 2}   This case began after law enforcement received a call raising concerns about horses in Flynn's care. After this call, law enforcement went to Flynn's property and described it as being "in disarray" with trash, discarded vehicles scattered about, and overgrown foliage. The horses on the property were very thin, showed signs of dehydration and malnourishment (visible hip bones and rib cages), matted hair, fly and lice infestations, and overgrown hooves in poor condition. The horses were in pens that were too small, contained fecal matter and other debris, had little to no shade or protection from the elements, and empty water buckets.

{¶ 3}   Chief Melissa Downs with the Brown County Humane Society and Dog Shelter later came to the property to inspect the horses. According to Downs, Flynn stated she was trying to rescue the horses. Flynn claimed the horses were in a refeed program— a program meant to gradually feed emaciated horses to get them back to normal weight— but Flynn had run out of food. Upon further questioning, Flynn refused to show Downs any documentation or messaging establishing when or from whom Flynn received the horses. In addition, Flynn could not give Downs the name of a veterinarian tied to the horses' refeed program or a farrier (an individual who specializes in trimming horse hooves). Instead, Flynn's daughter apparently volunteered to trim the hooves and was doing so slowly.

{¶ 4} Downs testified at trial she did not believe what Flynn told her. At one point during trial, the following exchange occurred:

> Prosecutor: Okay. At this point, how deeply were you trusting what Ms. Flynn was telling you?
>
> Downs: I was not.
>
> Prosecutor: Okay and was that based upon anything other than these statements that did not add up?
>
> Downs: It was everything that was not adding up that she was saying.

Downs further testified, "From what I was observing it appear[ed] that [Flynn was] being very careless, reckless in how [she was] caring for the animals. It was blatant neglect." The horses were removed from Flynn's property.

{¶ 5} Both Chief Downs and Dr. Grace Boyd, a veterinarian, examined the horses and scored them on a scale to 1-9, with 1 being emaciated and 9 being extremely obese. Chief Downs scored the horses at 4, 2.5-3, 2-2.5, 1.5, and 2-2.5. Dr. Boyd, scored the horses at 4, 1, 1.5, 1, and 1. If a horse receives a score below 3, it is considered to be in a "fragile" state. Seven weeks after the horses were removed from Flynn's property, Dr. Boyd saw significant improvement in several of the horses. Dr. Boyd testified that if the horses had been on a refeeding program in the weeks before they were removed from Flynn's property that they would not have been in the condition as Dr. Boyd originally found them.

{¶ 6} A grand jury charged Flynn with nine counts of cruelty to animals for mistreatment of five horses removed from her home. At trial, Flynn's defense centered around the argument that she, a vet-tech with 45 years' experience around horses, was trying to rescue the horses. She contended they were in bad shape when she received them, and they had not had enough time to recover before they were taken away. Flynn

asserted she took affirmative steps for the horses' care, including consulting her daughter, who is a horse trainer and caretaker (with prior vet tech experience), purchasing hay for the horses (with no proof of how often or when she last purchased hay), and scheduling an appointment with a farrier set for the week after the horses were taken.

{¶ 7} The jury convicted Flynn on all nine counts. The trial court sentenced Flynn to 90 days in jail on each charge but suspended that sentence on Counts 2-9. The trial court imposed five years of reporting probation, a $750 fine, $3,198.03 in restitution, and prohibited Flynn from owning livestock while on probation.

{¶ 8} Flynn now appeals.

**First Assignment of Error – Sufficiency and Manifest Weight of the Evidence**

*Applicable Law*

{¶ 9} Under Ohio law, "[n]o person shall . . . [t]orture an animal, deprive one of necessary sustenance . . . or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water." R.C. 959.13(A)(1). Ohio law also prohibits confining animals without giving them access to shelter from the elements. *Id.* at (A)(2). "Because [the statute] does not specify the mental state required to commit the offense, the state is required to prove the defendant acted recklessly." *State v. Graves*, 2017-Ohio-6942, ¶ 15 (12th Dist.). "Recklessly" is defined by statute:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C).

*Standard of Review*

{¶ 10} "When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Madden*, 2024-Ohio-2851, ¶ 31, citing *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 1997-Ohio-355, ¶ 49, fn. 4.

{¶ 11} Similarly, under Crim.R. 29(A), a defendant may be acquitted at trial by the court "if the evidence is insufficient to sustain a conviction of such offense or offenses." Thus, appellate courts review the denial of a motion for acquittal under the same standard as that used to review a sufficiency-of-the-evidence claim. *State v. Maloney*, 2023-Ohio-2711, ¶ 40 (12th Dist.), citing *State v. Mota*, 2008-Ohio-4163, ¶ 5 (12th Dist.).

{¶ 12} "A manifest weight of the evidence challenge examines the 'inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Madden*, 2024-Ohio-2851, ¶ 32, quoting *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.).

{¶ 13} In reviewing the evidence, an appellate court must be mindful that the

original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 2021-Ohio-466, ¶ 15 (12th Dist.).

{¶ 14} "[A]lthough the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, '[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency'" as well as Crim.R. 29. *State v. Billingsley*, 2020-Ohio-2673, ¶ 15 (12th Dist.), quoting *State v. Jones*, 2013-Ohio-150, ¶ 19 (12th Dist.).

*Analysis*

{¶ 15} In her first assignment of error, Flynn argues the State presented evidence that failed to prove Flynn's conduct was *reckless* as opposed to merely *negligent*. Flynn contends "the State failed to demonstrate that [the horses'] condition resulted from [her] 'heedless indifference' rather than a failed rescue attempt," making her conviction against the manifest weight of the evidence and unsupported by sufficient evidence (and meriting Crim.R. 29 dismissal at trial). Flynn asserts she "cannot be held responsible, and certainly not criminally liable and/or culpable for a failure to meet the high standard of care required for such fragile animals."

{¶ 16} Flynn's argument strains all credulity. Flynn does not (and could not) contest the horses were in physically poor condition and without immediate access to food or water where they were located when law enforcement arrived. The State, via evidence and testimony, demonstrated that if the horses had indeed been on a refeeding program with Flynn in the three weeks before law enforcement arrived, the horses would not have been found in such poor condition. The State argued—and a jury could reasonably

believe—such conditions demonstrated a recklessness on Flynn's part that disregarded a substantial and unjustifiable risk to the horses' health. After all, Flynn testified that she had 45 years of experience with horses, thereby holding herself out as an individual familiar with the needs of horses.

{¶ 17} Moreover, contrary to Flynn's argument on appeal, it was not the State's burden to disprove Flynn's explanation as to why the horses were in such poor condition. Flynn testified she acquired the horses in poor condition as part of a rescue program, that she had a farrier appointment scheduled, and that there were food and water on other parts of her property that law enforcement did not search. However, Flynn's testimony is the only evidence that supported these contentions. *State v. Morgan*, 2014-Ohio-2472, ¶ 36 (12th Dist.) ("[A]lthough the Morgans alleged during trial that the horse's frail condition could be attributed to poisoning or foul play by some unknown third party, the Morgans provided absolutely no evidence to support such claims."). We also note that although Flynn established she bought hay from a local vendor in the past, nothing in the record indicates *when* she most recently bought hay. It could have been the morning law enforcement arrived; it could have been weeks before.

{¶ 18} Even if the jury believed Flynn's accounting, nothing prevented the jury from still concluding Flynn disregarded a substantial and unjustifiable risk by accepting horses in this condition and then not providing adequate food, water, and shelter to them at all times. Ultimately, as we have held countless times over the years, "[a] jury's verdict is not against the manifest weight of the evidence simply because the jury believed the testimony offered by the [S]tate." *State v. Carso*n, 2024-Ohio-30, ¶ 12 (12th Dist.).

{¶ 19} Flynn's first assignment of error is overruled.

**Second Assignment of Error – Evidentiary Rulings**

*Applicable Law and Standards of Error*

{¶ 20} "The admissibility of relevant evidence rests within the sound discretion of the trial court." *State v. Atkinson*, 2010-Ohio-2825, ¶ 7 (12th Dist.). Unless a trial court abuses its discretion, and the defendant suffers prejudice as a result, appellate courts will not disturb the decisions of the trial court as to the admissibility of evidence. *Id*. A trial court abuses its discretion when it acts "unreasonably, arbitrarily, or unconscionably." *Bowman v. Leisz*, 2014-Ohio-4763, ¶ 17 (12th Dist.).

{¶ 21} However, if a party fails to raise the issue of admissibility of evidence at trial, that issue is forfeited on appeal unless plain error is shown. *In re A.R.B.,* 2024-Ohio-4830, ¶ 16 (12th Dist.). A party asserting plain error must show an obvious error by the trial court that affects that party's "substantial rights." *State v. Rogers*, 2015-Ohio-2459, ¶ 22. Stated differently, plain errors "'must have affected the outcome of the trial.'" *Id*., quoting *State v. Barnes*, 2002-Ohio-68, ¶ 20.

*Analysis*

{¶ 22} In her second assignment of error, Flynn argues the trial court improperly permitted Chief Downs to testify on matters that should have been left for the jury to decide. Flynn cites Chief Downs' testimony that Flynn's statements were not trustworthy and that the horses' condition was due to "blatant neglect."

{¶ 23} Flynn's argument is immediately complicated by the fact there were no objections to these purported errors at trial, meaning they are subject to plain error review. However, Flynn's briefing contains no reference to this standard, even after the State raised it in its briefing. "[I]t is not our duty to construct a plain error argument on [Flynn's] behalf," and Flynn's failure to do so—by itself—leaves this assignment of error without merit. *State v. Oghojafor*, 2023-Ohio-44, ¶ 104 (12th Dist.); *State v. Williams*, 2026-Ohio-

2033, ¶ 11 (12th Dist.).

{¶ 24} Nonetheless, we conclude that Flynn misconstrues the nature of Chief Downs' testimony because Chief Downs *never* commented on Flynn's general credibility. When read in context, Chief Downs simply stated she did not trust what Flynn told her regarding Flynn's care of the horses. For example, while Flynn asserted the horses were in a refeed program, she provided Chief Downs with no evidence to support this. Ultimately, Flynn's explanations simply did not "add up" given what Chief Downs observed at the scene, leading Chief Downs to not trust Flynn and conclude the horses' condition was the result of "blatant neglect." Even if we concluded Chief Downs' characterization of Flynn's care of the horses was improper, we must presume the jury nonetheless followed the trial court's instructions as to whether cruelty to animals, as defined by Ohio law, occurred. *State v. King*, 2023-Ohio-875, ¶ 53 (12th Dist.) ("We presume that jurors followed the court's instructions.").

{¶ 25} Flynn also argues the trial court abused its discretion by "allowing the State's experts to speculate on the horses' history, while restricting [Flynn] from introducing evidence regarding the horses' condition prior to the rescue." Flynn contends such testimony is speculation solely because neither could pinpoint when *exactly* the horses' poor physical condition began.[1] Put simply, this argument is undeveloped and blithely ignores the years of experience Chief Downs and Dr. Boyd possess regarding the care of horses. Moreover, Flynn does not specify *what* evidence she sought to admit in response to the "speculation" of the State's experts, *when* the trial court disallowed this alleged evidence, or *how* that evidence would have changed the outcome of Flynn's trial.

---

1. Flynn cites to pages 159 and 351 in the trial transcript to support her argument. We note that on page 159, *Detective Jake Dold* (not called upon by the State as an expert) was asked if he was "able to determine when the horses were originally not fed to get them in that condition?" to which he responded simply, "No." On page 351, defense counsel asked Dr. Boyd "Now, based on your observation of these animals, were you able to determine when these conditions originated?" to which she responded, "That's not possible."

- 9 -

Again, it is well established that appellate courts are not required to "'root out' or develop an argument that can support an assignment of error, even if one exists." *Rathert v. Kempker*, 2011-Ohio-1873, ¶ 12 (12th Dist.), quoting *Hausser & Taylor, LLP v. Accelerated Systems Integration, Inc.*, 2005-Ohio-1017, ¶ 10 (8th Dist.).

{¶ 26} In light of the foregoing, various issues thwart not only Flynn's assertion that evidentiary errors occurred at trial, but that the outcome of the trial would have been any different but for those purported errors.

{¶ 27} We overrule Flynn's second and final assignment of error.

{¶ 28} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.

- 11 -

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Municipal Court for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Robin N. Piper, Judge*

*/s/ Melena S. Siebert, Judge*